IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JACOB BRASHIER, | } |
| Plaintiff, | } |
| v. | } CASE NO.: |
| | } JURY TRIAL DEMANDED |
| MANORHOUSE MANAGEMENT, INC., | } |
| Defendant. | } |

## COMPLAINT

**COMES NOW** the Plaintiff, Jacob Brashier ("Plaintiff" or "Mr. Brashier"), by and through undersigned counsel, Law Office of James W. Friauf, PLLC; and, for his Complaint against Manorhouse Management, Inc. ("MMI" or "Defendant"), avers as follows:

### I. NATURE OF THE CASE

1. The present action is the result of a direct affront to the holding of the Supreme Court of the United States's holding in *Bostock v. Clayton Cnty.*, No. 17-1618, *et. al.* (S.Ct. June 15, 2020) https://fc7.fastcase.com/results?docUid=176922973.

2. Plaintiff, who identifies as a gay man, was summarily subjected to disparagement, ridicule, and humiliation in the course of his employment with Defendant. He files this action to rectify the wrongs he has experienced as a result of his sexual orientation, as well as to advance the rights of his fellow LGBTQ community members, who have been historically and unlawfully marginalized and oppressed for generations.

3. On June 15, 2020, the Supreme Court of the United States <u>finally</u> rendered a decision that comports with federal law and common sense: Congress's mandate in the passage of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* included the rule of law that citizens should not be discriminated against on the basis of their sex, including subjugation to discrimination on the basis of a citizen's status as a homosexual or transgender.

4. To many, this syllogism would appear axiomatic. Notwithstanding, in today's outlandish society, citizens whose sexual preferences differ from the "mainstream" are attacked with unrelenting vitriol. Such actions are an affront to the United States Constitution and our commitment to a liberal democracy.

5. As our Declaration of Independence declares: "We hold these truths to be self-evident, that ***all*** men [and women] are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness."

6. To deprive any man or woman, who is a citizen of these United States, of such rights, is a desecration of the founding principles that form the bedrock of our democracy and should not be tolerated in a civilized society

7. Through this action, Plaintiff stands before the altar of democracy, with the wind of the Supreme Court's precedent at his back and proclaims, "No longer will the LGBTQ Community be subjected to systematic prejudice. No longer will the LGBTQ Community be marginalized. No longer will the LGBTQ Community be relegated to the status of second-class citizens."

8. All men and women in this country, irrespective of their sexual orientation, are endowed by their Creator with certain unalienable rights. Today, Plaintiff, on his own, and in solidarity with his brothers and sisters in arms, declares that the days of systematic persecution are

in the past. No longer will citizens of the United States of America be persecuted for the preferences they hold in loving fellow humans. No longer will citizens of the United States be persecuted for following their hearts and their dreams. Today, the madness stops.

9. On June 15, 2020, the Supreme Court of the United States did what it should have done years, decades, and generations ago: it <u>finally</u> recognized the equality of men and women in this country. For years, brave men and women fought for this freedom. For too long, freedom eclipsed those who fought so valiantly for it. Today, as our society continues its monumental upheaval and reckoning over civil rights (which is long overdue), citizens should and must embrace their brothers and sisters, no matter their race, color, religion, sex, or national origin. The time has come for all Americans to unite in the common cause of freedom and liberty. It is time for our society to unshackle the bonds of hatred. The time is now.

10. This action supports all of our fellow brothers and sisters who have gallantly fought for equality, no matter their sexual orientation and no matter the cost. In the eyes of God and of man, we are all equal. This action is devoted to all who have fought, and who continue to fight, for the cause of universal freedom and equality.

## II. PARTIES

11. Plaintiff re-alleges and incorporates by reference each and every averment set forth in paragraphs 1-10 herein, inclusive.

12. Plaintiff is a resident citizen of the State of Tennessee, County of Blount. At all times material hereto, Defendant employed Plaintiff as a Certified Nursing Assistant ("CNA").

13. Defendant is a foreign, for-profit corporation with its principal place of business in the combined village(s) of Manakin-Sabot, Virginia. At all times material hereto, Defendant, was

engaged in the health care industry and transacts or has transacted, business in the State of Tennessee, County of Knox. Service of process may be perfected via Defendant's registered agent, Stephen Duggins, Esq., Law Office of Stephen S. Duggins, Suite B, 8052 Standifer Gap Road, Chattanooga, Tennessee 37421.

### III. JURISDICTION AND VENUE

14. Plaintiff re-alleges and incorporates by reference each and every averment set forth in paragraphs 1-13 herein, inclusive.

15. The Court has original jurisdiction to adjudicate this matter pursuant to 28 U.S.C. § 1331 in that this action arises from Defendant's failure to pay overtime compensation at a rate of not less than one and one-half (1 ½) times Plaintiff's regular rate of pay in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*.

16. The Court further has original jurisdiction to adjudicate this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00.

17. The Court has supplemental jurisdiction to adjudicate the remaining causes of action averred herein for discrimination against Plaintiff on the basis of his sexual orientation in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401, *et seq*. because such supplemental claims are so related to the claims within the original jurisdiction of this Court so as to form part of the same case or controversy.

18. Additionally, Plaintiff is filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") predicated on Defendant's violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. (sexual orientation

discrimination). Plaintiff will request a Notice of Right to Sue at his earliest procedural opportunity and will then move the Court to permit him to amend this Complaint so as to aver said cause of action, in addition to the causes of action presently averred.

19. A substantial portion of the events or omission giving rise to this matter occurred in Knox County, Tennessee. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

20. At all times material hereto, Defendant employed fifteen (15) or more employees. Accordingly, all employment actions *vis-à-vis* Defendant's discriminatory actions toward Plaintiff are subject to the provisions of the FLSA, THRA, and Title VII.

### IV. FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every averment set forth in paragraphs 1-20 herein, inclusive.

22. Defendant hired Plaintiff on or about April 9, 2020, as a CNA.

23. Plaintiff was hired by a person named "Carrie" [surname unknown].

24. Plaintiff's rate of pay at the time of his hire was $11.50 per hour.

25. Plaintiff began experiencing discriminatory treatment by his supervisor(s) beginning on or about June 6, 2020, including being called a "faggot" on several occasions and having a soiled rag thrown in his face.

26. Upon information and belief, Defendant's discriminatory treatment of Plaintiff was the result of: (1) Plaintiff's sexual orientation (gay); and (2) Defendant's anger arising from the Supreme Court of the United States's decision in *Bostock v. Clayton Cnty*.

5

27. Shortly prior to his termination, Plaintiff submitted a written report to Defendant stating he: (1) believed he was being discriminated against based on his sexual orientation; and, (2) believed he was not being properly compensated for overtime work.

28. After Plaintiff submitted his report, Defendant retorted Plaintiff was "lying" about being called a "faggot" and to "forget about it".

29. Upon information and belief, Defendant quickly disposed of Plaintiff's complaint without undertaking an investigation of Plaintiff's allegations of discrimination and wage and hour payment disparities.

30. Defendant undertook zero efforts to ameliorate the discrimination of which Plaintiff complained, nor did it investigate and correct the wage and hour violations of which Plaintiff had been subjected and subsequently complained.

31. Shortly after submitting a formal complaint to Defendant claiming he believed he was being discriminated against because of his sexual orientation, Defendant reduced Plaintiff's rate of pay from $11.50 per hour to $10.50 per hour (or by 8.7%).

32. Within days of Plaintiff complaining to Defendant he (Plaintiff) believed he was being subjected to discrimination on the basis of his sexual orientation; and, he believed he was not being properly compensated for overtime work, a coworker provided a resident (who was in the care of Plaintiff) with copious amounts of water to drink prior to said resident leaving Defendant's facility for a family visit.

33. The referenced patient suffers from cognitive (including mental) disabilities, which renders said resident incapable of bladder control.

34. As a direct and proximate result of the foregoing action of Defendant's employee in providing copious amounts of water to the resident, the resident self-urinated during the out-of-facility visit.

35. When the resident returned to Defendant's facility, Defendant blamed Plaintiff for the resident's self-urination.

36. Defendant predicated Plaintiff's termination (occurring on or about June 19, 2020) on the pretextual basis Plaintiff failed to properly administer medical care to the resident who self-urinated outside Defendant's facility.

37. Upon information and belief, "Alicia" [surname unknown] and "Elaine" [surname unknown] jointly made the decision to terminate Plaintiff's employment with Defendant.

38. Shortly after his termination, Plaintiff requested Defendant provide him a copy of his internal discrimination complaint.

39. Defendant's representative retorted, "If [Plaintiff] want[s] a copy of the report, [his] lawyer can request it" (or words to that effect).

40. Despite Plaintiff's requests, Defendant has categorically refused to provide Plaintiff a copy of his final "pay stub".

41. Upon information and belief, Defendant failed to properly pay Plaintiff for his hours worked during his final pay period while employed by Defendant.

42. The foregoing actions by Defendant constitute discrimination on the basis of sexual orientation, retaliation, and failure to properly pay overtime compensation.

43. This action follows.

## V. CAUSES OF ACTION

### COUNT I

Discrimination on the Basis of Sex and Retaliation:
(*Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, et seq.*)

44. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-43 herein, inclusive.

45. Plaintiff is homosexual. Therefore, he is a member of a protected class.

46. At all times material hereto, Plaintiff was qualified to perform the essential functions of his position.

47. Defendant repeatedly referred to Plaintiff using bigoted terms such as "faggot", threw soiled rags in Plaintiff's face; and, when Plaintiff filed an internal complaint of discrimination on the basis of his sexual orientation, Defendant promptly discarded the complaint and told Plaintiff to "stop being so *dramatic*" – or words to that effect.

48. As a direct and proximate result of: (1) Plaintiff's status as a gay male; (2) the Supreme Court's June 15, 2020, decision recognizing Title VII protects employees against discrimination in the workplace on the basis of sexual orientation; and (3) Plaintiff lodging an internal complaint of discrimination on the basis of sexual orientation, Defendant terminated Plaintiff's employment.

49. The foregoing conduct constitutes discrimination on the basis of sex in violation of the THRA.

50. As a direct and proximate result of Defendant's discrimination on the basis of sex and retaliation, Plaintiff has suffered injuries and damages and is entitled to the relief set forth more fully herein.

## COUNT II

### Failure to Pay Overtime Compensation:
### (*FLSA*)

51. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-50 herein, inclusive.

52. Plaintiff pleads additionally and alternatively to all other causes of action alleged in this Complaint, as may be amended.

53. During his employment with Defendant, Plaintiff was properly classified as a FLSA-non-exempt employee, meaning he should have been paid for all hours worked in excess of forty (40) per week at a rate of not less than one and one-half (1 1/2) times his regular rate of pay.

54. During his employment, Defendant failed to properly pay overtime compensation to Plaintiff earned during not less than two (2) weeks of his employment.

55. The foregoing conduct violates the FLSA's mandate of the payment of overtime compensation to non-exempt employees.

56. As a direct and proximate result of the foregoing conduct, Plaintiff is entitled to damages as averred more fully herein.

## VI. DAMAGES

57. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-56 herein, inclusive.

58. As a direct and proximate result of each of the foregoing acts, conduct, and violations of the law as alleged herein, Plaintiff has suffered damages in an amount and according to proof, including, without limitation, loss of employment, lost wages, lost overtime wages,

liquidated damages, loss of benefits, lost interest on benefits, actual monetary loss, physical and mental pain and suffering, embarrassment, humiliation, inconvenience, and other incidental and consequential damages.

59. Plaintiff is entitled to, and seeks, recovery of his attorneys' fees and costs pursuant to the FLSA and THRA.

60. Plaintiff seeks an award of pre- and post-judgment interest as permitted by law

61. Plaintiff seeks an award of punitive damages against Defendant as a result of Defendant's willful violation of Plaintiff's federally-protected civil rights.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. Compensatory damages in an amount to be awarded by a jury, not less than **FIVE HUNDRED THOUSAND DOLLARS AND 00/100 ($500,000.00).**

2. Liquidated damages in an amount double that of the overtime compensation denied to Plaintiff by Defendant.

3. Punitive damages in an amount to be awarded by a jury, not less than **ONE MILLION FIVE HUNDRED THOUSAND DOLLARS AND 00/100 ($1,500,000.00)** for Defendant's willful violation of Plaintiff's federally-protected civil rights.

4. Reasonable attorney's fees and costs incurred in prosecuting this action pursuant to the FLSA and THRA.

5. Incidental and/or consequential damages in an amount to be determined by a jury.

6. Any and all further relief this Honorable Court deems just and appropriate.

*Respectfully submitted this 30th day of June, 2020.*

## JACOB BRASHIER

By: /s/ *James W. Friauf*
James W. Friauf (#027238)
LAW OFFICE OF JAMES W. FRIAUF, PLLC
9724 Kingston Pike, Suite 104
Knoxville, Tennessee 37922
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No.: 20-079-EPL

*Attorney for Plaintiff Jacob Brashier*